# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KROWN1 FZC, <br><br> Plaintiff, <br><br> v. <br><br> CRANE WORLDWIDE LOGISTICS, <br><br> Defendant. | Case No. 18-cv-3001 <br><br> Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

Plaintiff Krown1 FZC sued Defendant Crane Worldwide Logistics for breach of contract, alleging that Crane failed to make Krown1 its exclusive agent for certain services, as required by the parties' contract. *See* [19]. Crane moved to dismiss for failure to state a claim under Rule 12(b)(6). *See* [25]. For the reasons explained below, the motion [25] is denied.

## Background

Defendant Crane is a full-service air, ocean, customs brokerage and logistics company; effectively, Crane arranges for subcontractors to provide the actual transportation services, including air, ground, and sea transportation. [19], ¶9. Plaintiff Krown1 specializes in transporting freight by air and provides all services necessary to get freight from its point of origin to its destination. *Id.* at ¶10. Krown1 provides air transportation services, as well as any tangential ground transportation services; Krown does not provide sea transportation services. *Id.*

Krown1 alleges that, in late 2014, Crane reached out to Krown1 to see if Krown1 wanted to partner with Crane in bidding on the United States Government's Multimodal Contract HTC-711-15-R-R001 (the Multimodal 2 Contract). *Id.* at ¶11. Under that contract, the government would select a prime contractor to provide air, land, and sea transportation in cooperation with various subcontractors. *Id.* at ¶12. Krown1 agreed to partner with Crane to bid on the Multimodal 2 Contract, subject to the two parties entering into an exclusive agreement contract. *Id.* at ¶ 13. The two companies joined forces with United Airlines to submit a bid, which was ultimately successful. *Id.* United was named a prime contractor under the Multimodal 2 Contract, and United, in turn, named Crane its subcontractor; Crane, in turn, named Krown1 as its subcontractor. *Id.* at ¶14. Krown1 alleges that, under the parties' arrangement, United and Crane would contract with another subcontractor to provide sea transportation services, while Krown1 would provide air transportation services, along with the ground transportation associated with those air services. *Id.* at ¶15.

Additionally, Krown1 alleges, under the parties' arrangement, United would earn 2% and Crane was to earn 3% of a total bid, excluding certain charges, while Krown1 would have final decision making on pricing for all bids submitted to the government on air services to be performed under the Multimodal 2 Contract. *Id.* at ¶16. To memorialize this arrangement, on March 10, 2015, Crane and Krown1 executed an "Agreement for Subcontractor Services." *See* [19-1]. The Agreement recognized Crane's role as a 'freight forwarder" and Krown1's desire "to identify and

conclude a contract with [Crane] as a Subcontractor involved in the provision of Air, Land and/or Ocean transportation for the Multimodal Contract HTC-711-15-R-R00l at the best possible price to operate in the Middle East, Afghanistan and other Areas as may be required under the said Contract." *Id.* at p. 2. Under the Agreement, Krown1 agreed to:

> offer Support services for the bidding and fulfillment of the abovesaid Contract including, but not limited to:
>
> i.   Air/Sea or Land Transportation from the origin to the destination or part thereof,
>
> ii.  Associated Customs clearance, MOD and Diplomatic permissions for the transfer and movement of cargo across various states.

*Id.* Additionally, according to Krown1, the Agreement named Krown1 as Crane's exclusive agent, *id* at ¶¶17-18, as follows:

> **Exclusive Agency**
> The Company confirms this agreement to be exclusive for the abovesaid Contract whether directly or indirectly except for Pre-existing Contracts identified prior to the submission of Support Data by Krown1. Any changes to the exclusivity must be agreed in writing between the Company and Krown1.

[19-1], p. 2.

Krown1 alleges that, in approximately April or May of 2015, Crane asked Krown1 to sign another vendor agreement for freight forwarding services, which did not include an exclusive agent provision. [19], ¶20. Krown1 refused, and the parties operated under the executed Agreement for nearly three years, with Krown1 regularly providing bid information on transportation services. *Id.* at ¶¶21, 25.

3

Krown1 also alleges that, in reliance on the parties' initial Agreement, Krown1 expanded its operations to be able to meet the anticipated demands for services under the Multimodal 2 Contract. *Id.* at ¶22. Krown1 anticipated that Crane would reach a separate agreement with another subcontractor to provide sea transportation services under the Multimodal 2 Contract. *Id.* at ¶26. Yet Crane failed to hire a sea transport provider and, as a result, Krown1 secured less work under the Agreement than anticipated. *Id.* at ¶¶26–28.

Finally, Krown1 alleges that, in early 2018, Crane stopped honoring the exclusive agent provision of the parties' Agreement. *Id.* at ¶32. In February 2018, United won a bid under the Multimodal 2 Contract, and sent an email to Crane and Krown1 so advising. *Id.* Krown1 sent Crane an email saying "Congratulations on the win! Please find attached the charter contract for this move." [19-1], p. 9. Crane responded by advising Krown1 that the award did not involve Krown1's bid, and that the parties would not be needing the contract Krown1 sent. [19], ¶33; [19-1], p. 9.

Krown1 filed this lawsuit on April 27, 2018. In its amended complaint, Krown1 alleges that Crane breached the Agreement for Subcontractor Services in the following ways: (1) by using air transport service providers other than Krown1, including on the bid awarded to Crane on February 15, 2018; (2) by indicating to Krown1 that it would not provide Krown1 with any additional bids under the Agreement unless Krown1 agreed to remove the exclusive agency provision from the parties' Agreement; (3) by not accepting Krown1's pricing, and instead insisting

4

that Krown1 lower its pricing so that Crane would earn a greater profit on work done by Krown1 under the Agreement; and (4) by failing to identify a sea transport service provider to provide sea transport services under the Multimodal 2 Contract, thereby resulting in less work and profits for Krown1 under the parties' Agreement. [19], ¶¶43–46. Crane moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## **Legal Standard**

Under 12(b)(6) the Court must construe the Complaint in the light most favorable to Plaintiff, accept as true all well-pleaded facts and draw all reasonable inferences in its favor. *Yeftich v. Navistar, Inc.,* 722 F.3d 911, 915 (7th Cir. 2013). Statements of law, however, need not be accepted true. *Id*. To survive Defendant's motion under Rule 12(b)(6), the Complaint must "state a claim to relief that is plausible on its face." *Id*. A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran,* 714 F.3d 432, 436 (7th Cir. 2013).

## Analysis

Under Illinois law,[1] to prevail on a breach of contract claim, a plaintiff must prove: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Asset Exchange II, LLC v. First Choice Bank*, 953 N.E.2d 446, 455 (Ill. App. Ct. 2011). "Only a duty imposed by the terms of a contract can give rise to a breach." *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007) (quoting *W.W. Vincent & Co. v. First Colony Life Ins. Co.,* 814 N.E.2d 960, 967 (Ill. App. Ct. 2004)).

Crane argues that Krown1's claim fails because the alleged breaches are not tied to any duty imposed under the parties' Agreement. That holds true with respect to Crane's alleged failure to hire a sea transport subcontractor. The parties Agreement imposes no such obligation on Crane, and Krown1 does not allege otherwise. Rather, Krown1 alleges that it "anticipated" that Crane would hire another subcontractor to provide sea transportation services under the Multimodal 2 Contract. [19] at ¶26. In fact, the only language in the parties' contract relating to sub-contracting provides that "Krown1 shall have the right to enter into any subcontract/marketing arrangement that will mutually benefit the Company and Krown1." [19-1], p. 3. As a result, the Court agrees with Crane that Krown1 cannot state a claim for breach of contract based upon any failure on Crane's part to hire a

---

[1] The parties' Agreement provides that disputes arising thereunder shall be resolved in the Courts of the UAE, in accordance with the laws of the UAE. [19-1], p. 4. Both parties represented in their court filings and in open court, however, that they want their dispute resolved here, in accordance with Illinois law.

sea transport subcontractor (as alleged in paragraphs 45 and 46 of the Amended Complaint). *See, e.g., Bortz v. Bank of Am., N.A.*, No. 16-CV-5338, 2016 WL 7104288, at *4 (N.D. Ill. Dec. 6, 2016) (Plaintiff cannot allege a claim for breach of contract without identifying a provision of the agreement that was actually breached); *Burke v. 401 N. Wabash Venture, LLC*, No. 08 CV 5330, 2010 WL 2330334, at *2 (N.D. Ill. June 9, 2010) (If Plaintiff fails to allege a contract provision that was breached, "the claim is merely possible, not plausible.").

Similarly, the parties' signed Agreement remains silent on pricing and profit sharing. Nevertheless, Plaintiff alleges that under the parties' "arrangement," Krown1 retained "final decision making on pricing for all bids submitted to the government on air services to be performed under the Multimodal 2 Contract." [19] at ¶16. In support, the Complaint attaches an email exchange in August 2015, months after they executed the Agreement, and these emails detail certain pricing and profit-sharing terms. *See* [19-1], p. 6. Shiv at Krown1 emailed John Weir at Crane "to reconfirm" the parties' "commercial arrangement" that Crane would get "3% of the Total Bid excluding any accessorial or pass through charges" and Krown1 would have "final say over the per lb pricing to be submitted to the government." *Id.* John Weir responded with an email stating "Ok let's start with this for now and excluding LTO's." *Id.* The import of these emails may ultimately be diminished in light of the integration clause in the parties' Agreement. *See, e.g., Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 878 (7th Cir. 2005) (under Illinois law, parol evidence may not be used to add terms to a fully integrated agreement). At this juncture,

7

however, the emails, read in conjunction with the Agreement, make plausible Krown1's claim that Crane breached the parties' Agreement by failing to accept Krown1's pricing.

Krown1's claim that Crane breached the exclusivity provision in the parties' Agreement is also plausible. Crane concedes that the parties' Agreement includes the above "Exclusive Agency" provision, but it argues that the provision does not mean what Krown1 alleges it means. Crane claims that the provision did not require Crane to use Krown1 for *all* air transport service work it did under the Multimodal 2 Contract, as Krown1 alleges. Rather, Crane argues, the provision limited the parties' arrangement to work Krown1 performed for Crane on the Multimodal 2 Contract. *See* [26], pp. 4–5. Thus, Crane explains, if Crane were to engage Krown1 to perform work under a different contract, the subject Agreement and its terms would not apply. *Id.* at 5. To be sure, Crane's reading finds support in the emails attached to Krown1's complaint, as they propose that the parties would need to execute a new contract to cover any work awarded to United on the successful 2018 bid. But at this stage of the proceedings, the Court cannot say that Krown1's reading of the Exclusive Agency provision is implausible. Accordingly, Krown1's breach of contract claim may proceed.

## Conclusion

For the reasons explained above, Crane's motion to dismiss [25] is denied, and Krown1 may proceed on its claim that Crane breached the parties' Agreement for Subcontractor Services by failing to honor pricing terms and by failing to use

8

Krown1 exclusively for services performed under the Multimodal 2 Contract. Based on the operative complaint, Krown1 may not pursue a breach of contract claim based upon any alleged failure to hire a sea transport subcontractor (as alleged in paragraph 46 of the Amended Complaint). The case is set for a case management conference on March 13, 2019 at 9:45 a.m. in Courtroom 1203.

Dated: February 26, 2019

Entered:

United States District Judge